**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

JUDAH M. BURSTYN,

Debtor.
______________________________________/

Case No. 19-12052-AJC
Chapter 7

MARCIA T. DUNN, not individually but as Chapter 7 Trustee of the estate of the Debtor,

Plaintiff,

v.

Adv. Case No. __________

YUDAMAS OLIVARES, an individual; PRIME REALTY INVESTORS CORP., a dissolved Florida corporation; MALIBU PROPERTIES MANAGEMENT LLC, a dissolved Florida limited liablity company; PRIME REALTY INVESTORS LLC, a dissolved Florida limited liability company; 15330 NE 10, LLC, a dissolved Florida limited liability company; JUDAH M. BURSTYN, an individual; DAVID A. BURSTYN, an individual; and BRADLEY KEITH BURSTYN, an individual,

Defendants.
________________________________________/

# COMPLAINT

Plaintiff, MARCIA T. DUNN, in her capacity as the duly appointed Chapter 7 trustee of the bankruptcy estate of JUDAH M. BURSTYN, in the above-captioned main case (the "Trustee" or "Plaintiff"), by and through undersigned counsel, brings this Complaint against Defendants, YUDAMAS OLIVARES, and individual ("Olivares"); PRIME REALTY INVESTORS CORP., a dissolved Florida corporation ("Prime Corp."); MALIBU PROPERTIES MANAGEMENT LLC, a dissolved Florida limited liability company ("Malibu"); PRIME REALTY INVESTORS

LLC, a dissolved Florida limited liability company ("Prime LLC"); 15330 NE 10, LLC ("15330"); JUDAH M. BURSTYN, an individual (the "Debtor"); DAVID A. BURSTYN, an individual ("D. Burstyn"); and BRADLEY KEITH BURSTYN, an individual ("B. Burstyn") (collectively, the "Defendants") and in support thereof alleges as follows:

**JURISDICTION & VENUE**

1. This is an adversary proceeding brought by the Trustee against Defendants (i) to avoid and recover fraudulent transfers pursuant to 11 U.S.C. §§ 544, 548, 549, and 550; and Fla. Stat. §§ 726.105(1)(a), 726.105(1)(b), 726.106(1), and 726.108(1)(a); (ii) for declaratory judgment; and (iii) for other relief under applicable non-bankruptcy federal and state law.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and Fed. R. Bankr. P. 7001.

3. Venue is proper herein pursuant to 28 U.S.C. §§ 1408 and 1409(a).

4. This is a core proceeding for which this Court is authorized to hear and determine all matters and enter final judgment in accordance with 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).

5. All conditions precedent to the filing of this Adversary Proceeding have been performed, have occurred, have been waived, or have otherwise been excused.

**PARTIES**

6. Plaintiff, MARCIA T. DUNN, is the duly appointed Trustee in the underlying Chapter 7 bankruptcy proceeding and authorized to bring this action. This action is brought solely in Ms. Dunn's capacity as Trustee of the Debtor's bankruptcy estate in the Main Case (the "Estate").

7. Defendant, YUDAMAS OLIVARES, is an individual residing in Miami-Dade County, Florida subject to the personal jurisdiction of this Court, and otherwise *sui juris.*

8. Olivares is the former fiancé of the Debtor.

9. Defendant, PRIME REALTY INVESTORS CORP., is a dissolved Florida corporation transacting business in the State of Florida with its principal place of business in Miami-Dade County, Florida.

10. Defendant, MALIBU PROPERTIES MANAGEMENT LLC, is a dissolved Florida limited liability company transacting business in the State of Florida with its principal place of business in Miami-Dade County, Florida.

11. Defendant, PRIME REALTY INVESTORS LLC, is a dissolved Florida limited liability company transacting business in the State of Florida with its principal place of business in Miami-Dade County, Florida.

12. Defendant, 15330 NE 10, LLC, is a dissolved Florida limited liability company transacting business in the State of Florida with its principal place of business in Miami-Dade County.

13. Together, Prime Corp., Malibu, Prime LLC, and 15330 shall hereinafter be referred to as the "<u>Alter Ego Entities</u>".

14. Defendant, JUDAH M. BURSTYN, is an individual residing in Miami-Dade County, Florida subject to the personal jurisdiction of this Court, and otherwise *sui juris*.

15. Judah Burstyn is the Debtor in the above-captioned bankruptcy case.

16. Defendant, DAVID A. BURSTYN, is an individual residing in Miami-Dade County, Florida subject to the personal jurisdiction of this Court, and otherwise *sui juris*.

17. Defendant, BRADLEY KEITH BURSTYN, is an individual who has operated, conducted, engaged in, or carried on a business or business venture in the State of Florida, or has engaged in substantial and not isolated activity within the State of Florida, and is otherwise *sui juris* and subject to the jurisdiction of this Court.

## BACKGROUND AND GENERAL ALLEGATIONS

### A. The Debtor's Bankruptcy Filing

18. The Debtor has an extensive professional background in real estate investment and development, with decades of experience in both residential and commercial projects, including distressed acquisitions at foreclosure sales.

19. On February 15, 2019 (the "Petition Date"), the Debtor commenced the instant bankruptcy case with the filing of a voluntary petition under Chapter 13, Title 11 of the United States Bankruptcy Code.

20. On April 27, 2019, the Debtor filed a Notice of Voluntary Conversion to Chapter 7 [D.E. 22], and an Order Upon Conversion of Case Under to Chapter 7 by the Debtor was entered by the Court on April 29, 2019 [D.E. 23].

21. The Debtor's initial Schedule "A/B", Line 1.3, lists the Debtor's ownership, *inter alia*, in a piece of real property located at 8212 N.W. 201st Street, Hialeah, FL 33015 (the "Marbella Property"), with a scheduled value of $450,000.00 [D.E. 29].

22. Debtor's Schedule "A/B" notes that the Marbella Property is in the possession of the Debtor's former fiancé, Olivares, and lists Olivares as owning half of the Marbella Property [D.E. 29].

23. The Debtor's Amended Schedule "A/B", Line 30, further lists $120,000 owed to the Debtor by his "Ex-Girlfriend", Olivares [D.E. 58].

24. The Trustee took the 2004 examination of the Debtor on October 16, 2019.

25. The Debtor's testimony and documents obtained by the Trustee throughout her investigation revealed fraudulent transfers to Olivares.

**B. The Debtor's Operation of Prime Corp. as an Alter Ego Entity**

26. At all times relevant to the transfers described herein, the Debtor was sole owner, director, and officer of Prime Corp., a real estate brokerage entity.

27. Prime Corp. was incorporated on October 27, 1993,[1] with the Debtor listed as the officer and director on all annual reports filed with the Florida Division of Corporations.

28. On the Debtor's Amended Schedule "A/B", the Debtor listed a 100% ownership interest in Prime Corp. [D.E. 58].

29. At all times relevant to the transfers described herein, the Debtor dominated and controlled Prime Corp.

30. At all times relevant to the transfers described herein, the Debtor failed to follow corporate formalities with respect to Prime Corp.

31. From the Trustee's investigation into the Debtor's books and records, Prime Corp. failed to keep or maintain and separate corporate records in any form.

32. Further, the Trustee's investigation has revealed that the Debtor commingled corporate and personal affairs with respect to Prime Corp.

33. By way of example, and not limitation, the Debtor routinely paid a credit card held in the name of Prime Corp. by using funds from his personal bank account, and also deposited

[1] Prime Corp. was administratively dissolved in 2018. However, the Debtor incorporated Prime Realty Investors Corp. again on April 9, 2019, with the Debtor listed as the sole officer and director of the entity. Prime Corp. was again administratively dissolved in 2020.

monies owed either to the Debtor or his unrelated entities (e.g., rents collected) into a bank account held in the name of Prime Corp.

34. In doing so, the Debtor completely disregarded any corporate form with respect to Prime Corp. and used the entity interchangeably with his own, unrelated personal and other business affairs.

**C. The Debtor's Operation of Malibu as an Alter Ego Entity**

35. At all times relevant to the transfers described herein, the Debtor was the sole owner, sole director, and sole officer of Malibu.

36. Malibu was incorporated on March 3, 2014,[2] with the Debtor listed as the sole officer and director on all annual reports filed with the Florida Division of Corporations.

37. At all times relevant to the transfers described herein, the Debtor dominated and controlled Malibu.

38. At all times relevant to the transfers described herein, the Debtor failed to follow corporate formalities with respect to Malibu.

39. From the Trustee's investigation into the Debtor's books and records, Malibu failed to keep or maintain and separate corporate records in any form.

40. Further, the Trustee's investigation has revealed that the Debtor commingled corporate and personal affairs with respect to Malibu.

41. By way of example, and not limitation, the Debtor routinely paid various credit cards held in his individual name by using funds held in a bank account titled in the name of Malibu, and also routinely deposited monies related either to the Debtor's personal affairs or his

[2] Malibu was administratively dissolved on September 22, 2017.

unrelated entities (e.g., loan proceeds and sale proceeds) into a bank account held in the name of Malibu.

42. In doing so, the Debtor completely disregarded any corporate form with respect to Malibu and used the entity interchangeably with his own, unrelated personal and other business affairs.

**D. The Debtor's Operation of Prime LLC as an Alter Ego Entity**

43. At all times relevant to the transfers described herein, the Debtor was sole owner, director, and officer of Prime LLC.

44. Prime LLC was incorporated on December 27, 2013,[3] with the Debtor listed as the sole officer and director on all documents filed with the Florida Division of Corporations.

45. At all times relevant to the transfers described herein, the Debtor dominated and controlled Prime LLC.

46. At all times relevant to the transfers described herein, the Debtor failed to follow corporate formalities with respect to Prime LLC.

47. From the Trustee's investigation into the Debtor's books and records, Prime LLC failed to keep or maintain and separate corporate records in any form.

48. Further, the Trustee's investigation has revealed that the Debtor commingled corporate and personal affairs with respect to Prime LLC.

49. By way of example, and not limitation, the Debtor routinely transferred monies held in his personal bank account and in bank accounts held by his unrelated entities into bank accounts held in the name of Prime LLC.

[3] Prime LLC was administratively dissolved in 2017.

50. In doing so, the Debtor completely disregarded any corporate form with respect to Prime LLC and used the entity interchangeably with his own, unrelated personal and other business affairs.

**E. The Debtor's Operation of 15330 as an Alter Ego Entity**

51. At all times relevant to the transfers described herein, the Debtor was sole owner, director, and officer of 15330, an entity which was formed to hold real property purchased by the Debtor.

52. 15330 was incorporated on January 20, 2009,[4] with the Debtor listed as the sole officer and director on all documents filed with the Florida Division of Corporations.

53. At all times relevant to the transfers described herein, the Debtor dominated and controlled 15330.

54. At all times relevant to the transfers described herein, the Debtor failed to follow corporate formalities with respect to 15330.

55. From the Trustee's investigation into the Debtor's books and records, 15330 failed to keep or maintain and separate corporate records in any form.

56. Further, the Trustee's investigation has revealed that the Debtor commingled corporate and personal affairs with respect to 15330.

57. By way of example, and not limitation, the Trustee's investigation has revealed that substantially all of the funds of 15330 are directly traceable to the Debtor through funds held in his personal accounts, and that the Debtor routinely paid for credit cards held in the name of 15330 by using monies held in his personal bank account.

[4] 15330 was administratively dissolved in 2013.

58. In doing so, the Debtor completely disregarded any corporate form with respect to 15330 and used the entity interchangeably with his own, unrelated personal and other business affairs.

**F. The Debtor's Personal ITF Accounts**

59. In April 2012, the Debtor opened an individual checking account at Bank of America ending in x2233 and titled as "Judah Burstyn ITF David A. Burstyn and Bradley Burstyn" (the "2233 BoA Account").

60. In December 2013, the Debtor opened an individual demand deposit account at Bank of America ending in x6114 and titled as "Judah Burstyn Special Account" (the "6114 BoA Account") (collectively, the 2233 BoA Account and the 6114 BoA Account shall be referred to as the "ITF Accounts").

61. On the respective signature cards for the ITF Accounts the Debtor marked the accounts as "individual" and was the sole authorized signatory.

62. The Trustee's investigation has revealed that the ITF Accounts, at all times material to the transfers described herein, contained only personal funds of the Debtor and were only used by the Debtor.

63. The Trustee asserts that neither D. Burstyn or B. Burstyn had or have any interest in any funds held in the ITF Accounts, and that the ITF Accounts are solely property of the Debtor.

**G. Acquisition and Transfer of the Marbella Property to Olivares**

64. In March 2014, Prime Corp. acquired title to the Marbella Property for consideration of $12,100, as evidenced by the Certificate of Title recorded on March 25, 2014, in the Official Records of Miami-Dade County, Florida as CFN 2014R0213556. A true and correct copy of the Certificate of Title is attached hereto as **Exhibit A**.

65. Shortly thereafter, Prime Corp. transferred title for the Marbella Property to Olivares by virtue of a Quit-Claim Deed recorded on April 9, 2014, in the Official Records of Miami-Dade County, Florida as CFN 2014R0254708. A true and correct copy of the Quit-Claim Deed is attached hereto as **Exhibit B**.

66. The Quit-Claim Deed transferring title for the Marbella Property to Olivares was executed by the Debtor as President of Prime Corp.

67. The transfer of the Marbella Property was made to or for the benefit of Ms. Olivares.

68. The transfer of the Marbella Property was made by Prime Corp., an entity in which the Debtor maintained control through his 100% ownership interest and an entity which the Debtor operated as his mere instrumentality and/or alter ego.

69. As such, the transfer of the Marbella Property was a transfer of property that in fact belonged to the Debtor.

70. The Debtor's books and records do not indicate that Olivares provided the Debtor with reasonably equivalent value in exchange for the transfer of the Marbella Property.

71. The Debtor's books and records do not indicate that the transfer of the Marbella Property had a connection with or were related to the business of the Debtor.

**H. Improvements to and Furnishing of the Marbella Property**

72. Following the Debtor's transfer of the Marbella Property, the Debtor's books and records reflect that the Debtor paid for the following purchases from El Dorado Furniture for Olivares' benefit at the Marbella Property:

a. Sales Order #0830409EK29 dated 8/31/2014 in the amount of $9,583.43;

b. Sales Order #0314709PB28 dated 3/18/2017 in the amount of $6,277.23;

c. Sales Order #0403709AO25 dated 4/5/2017 in the amount of $2,688.54;

d. Sales Order #0403709AO59 dated 4/5/2017 in the amount of $1,908.83;

e. Sales Order #0403709AO59A dated 4/5/2017 in the amount of $897.68; and

f. Sales Order #0418709HP44 dated 4/24/2017 in the amount of $2,807.63.

73. Further, the Debtor's books and records reflect that, in August 2014, the Debtor purchased stainless-steel appliances with extended warranties at BrandsMart U.S.A. totaling $5,924.22 for Olivares' benefit at the Marbella Property.

74. The Debtor's purchases of furniture and appliances for the Marbella Property shall collectively be referred to as the "Marbella Furnishings".

75. Upon information and belief, the Debtor, using his personal funds or through funds of an entity controlled by the Debtor, paid for the furniture and appliances specified herein to the benefit of Olivares.

76. In addition to purchasing furniture and appliances for the Marbella Property, the Debtor's books and records reflect that the Debtor paid for substantial improvements and renovations to the Marbella Property for Olivares' benefit.

77. By way of example, and not limitation, in August 2014, Olivares contracted with Odissey Enterprises, Inc. for the installation of a swimming pool and spa for the cost of $27,100.00.

78. In addition to the pool and spa, the improvements and renovations paid for by the Debtor include, but are not limited to, interior and exterior renovations and remodeling (i.e., granite counters, marble floors), hurricane-impact window installation, barrel-tile roof repair, plumbing, labor costs, and tree and landscaping services at the Marbella Property for the benefit of Olivares.

79. The Debtor's books and records reflect that the Debtor made payments in excess of $150,000.00 for improvements and renovations to the Marbella Property for the benefit of Olivares

through funds held in his personal accounts, including, but not limited to, the ITF Accounts, and funds of the Alter Ego Entities, including, but not limited to, a bank account held in the name of 15330 ending in x5249, as detailed on **Exhibit C** attached hereto, which the Trustee incorporates herein by reference.

80. The Debtor's payments for improvements and renovations to the Marbella Property shall collectively be referred to as the "Marbella Improvements".

81. The Debtor's books and records do not indicate that Olivares provided the Debtor with reasonably equivalent value in exchange for the Debtor's payments for the Marbella Furnishings and the Marbella Improvements.

82. The Debtor's books and records do not indicate that the Debtor's payments for the Marbella Furnishings and the Marbella Improvements had a connection with or were related to the business of the Debtor.

83. As a result of the Debtor's payments for the Marbella Furnishings and the Marbella Improvements, the value of the Marbella Property increased which provided a benefit to Olivares in the form of increased equity in the Marbella Property.

### I. Legal Fees Paid by Debtor Regarding the Marbella Property

84. Following the Debtor's transfer of the Marbella Property to Olivares, the Debtor retained the law firm of Brodsky Fotiu-Wojtowicz, PLLC ("Brodsky") to defend Olivares as an interested party in the foreclosure case styled as HSBC Bank, USA v. Angela Sosa, et al., Case No. 13-23168 CA 35 in the Miami-Dade County Circuit Court (the "Foreclosure Case"), which concerned the foreclosure of a mortgage on the Marbella Property.

85. On June 10, 2014, Olivares filed an Answer to the Complaint as an intervenor in the Foreclosure Case, and the Debtor retained Brodsky in 2017 to defend Olivares' position.

86. Upon information and belief, while Olivares was the client for purposes of Brodsky's representation in the Foreclosure Case, all invoices for legal fees and costs were issued to and paid by the Debtor and/or the Alter Ego Entities.

87. The Debtor also retained Brodsky for the benefit of Olivares to prosecute a quiet title action regarding the Marbella Property.

88. On October 9, 2017, Olivares, through Brodsky, initiated the case styled as Yudamas Olivares v. HSBC Bank USA, Nat. Ass'n as Trustee for Fremont Home Loan Trust 2006-C, Mortgage-Backed Certificates Series 2006-C, et al., Case No. 17-023818 CA 01 in the Miami-Dade County Circuit Court (the "Quiet Title Case").

89. Upon information and belief, while Olivares was the client for purposes of Brodsky's representation in the Quiet Title Case, all invoices for legal fees and costs were issued to and paid by the Debtor and/or the Alter Ego Entities.

90. The benefit of the legal representation provided to Olivares in the Foreclosure Case and Quiet Title Case was that, upon settlement and conclusion of the legal matters, Olivares possessed clear title to the Marbella Property.

91. The Trustee's investigation revealed that the Debtor and/or the Alter Ego Entities made payments in excess of $14,000.00 for the legal fees and costs in the Foreclosure Case and Quiet Title Case for the benefit of Olivares.

92. This benefit conferred upon Olivares was the result of the Debtor's retention of Brodsky and payment of invoiced legal fees and costs for which Olivares provided the Debtor no reasonably value in return.

93. Following the resolution of the Foreclosure Case and the Quiet Title Case, Olivares obtained a Mortgage on the Marbella Property from Freedom Mortgage Corporation in the amount

of $193,500.00, as evidenced by the Mortgage recorded on July 25, 2018, as CFN 20180446844, Book 31073, Page 657 in the Official Records of Miami-Dade County, Florida. A true and correct copy of the Mortgage is attached hereto as **Exhibit D**.

**J. Additional Transfers to or for the Benefit of Olivares**

94. Upon information and belief, the Debtor made additional transfers, which include, but is not limited to, numerous, additional payments on his personal credit card to or for the benefit of Olivares, and purchases of personal property to or for Olivares' benefit, which include, but is not limited to, a Rolex watch, a gold watch, clothing, and shoes (the "Additional Transfers").

95. The Debtor's books and records do not indicate that Olivares provided the Debtor with reasonably equivalent value in exchange for the Debtor's payments for the Additional Transfers.

96. The Debtor's books and records do not indicate that the Debtor's payments for the Additional Transfers had a connection with or were related to the business of the Debtor.

**K. Additional Fraudulent Transfers of Money to or for the Benefit of Olivares**

97. Prior to the Petition Date, the Debtor and the Alter Ego Entities made additional monetary transfers to or for the benefit of Olivares in the net total Amount of **$214,799.54**, as detailed on **Exhibit E** attached hereto, which the Trustee incorporates herein by reference, and contains: (i) a list of payments received by Olivares from the Debtor and the Alter Ego Entities or made on behalf of Olivares from the Debtor and the Alter Ego Entities during the applicable time frame; (ii) the date of each payment; (iii) the amount of each payment; (iv) the bank account from which each payment was made; and (v) the method of payment (collectively, the "Monetary Transfers").

98. In addition to monetary transfers made directly from the Debtor and the Alter Ego Entities to Olivares, the Debtor and the Alter Ego Entities also made payments to BMW Financial Services to and for the benefit of Olivares.

99. Upon information and belief, the Debtor and the Alter Ego Entities made payments to BMW Financial Services in connection with a leased car driven by Olivares.

**L. The Collective Fraudulent Transfers**

100. Collectively, as used hereinafter the term "Fraudulent Transfers" shall refer to the (i) transfer of the Marbella Property to Olivares; (ii) Marbella Furnishings (iii) Marbella Improvements; (iv) payments of legal fees and costs for representation of Olivares regarding the Marbella Property for the benefit of Olivares; (v) Additional Transfers; and (v) the Monetary Transfers.

101. At the time of the Fraudulent Transfers, the Debtor had at least one actual unsecured creditor, including but not limited to the Internal Revenue Service, and other creditors holding unsecured claims which are allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Fraudulent Transfers were avoidable under applicable law, including 11 U.S.C. § 548. [***see e.g.*** **Claim 11, Main Case**].

102. The Debtor (i) did not receive reasonably equivalent value in exchange for the Fraudulent Transfers; (ii) was insolvent at the time of the Fraudulent Transfers or became insolvent as a result thereof; (iii) were engaged or were about to engage in a business or transaction for which the remaining assets of the Debtor was unreasonably small in relation to the business or transaction; or (iv) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they came due.

103. Each of the Fraudulent Transfers were made to or for the benefit Olivares.

104. Each of the Fraudulent Transfers were of funds and/or property belonging to the Debtor and each of the Fraudulent Transfers was made from accounts that were property of the Debtor.

105. The Fraudulent Transfers did not relate to the Debtor's business operations.

106. The Fraudulent Transfers did not confer any benefit upon, nor provide any value to the Debtor or his creditors.

107. The Debtor's records do not indicate that the Fraudulent Transfers had a connection with or were related to the business of the Debtor.

108. The Debtor's records do not indicate that Olivares provided the Debtor with reasonably equivalent value in exchange for the Fraudulent Transfers.

109. Upon information and belief, the Fraudulent Transfers were made for the personal expenses of Olivares or for the benefit of other third parties.

110. The Debtor was insolvent at the time the Fraudulent Transfers were made.

111. At the time of the Fraudulent Transfers, the Debtor was not generally paying his debts as they came due; had obligations and faced claims beyond the Debtor's ability to pay; and otherwise had liabilities which exceeded the true value of his assets.

112. Any conditions precedent to bringing this action have been performed, have occurred, have been waived, or have otherwise been excused.

## RESRVATION OF RIGHTS

113. The Trustee is an after-the-fact appointed fiduciary.

114. The Trustee reserves the right to amend, modify, and/or supplement these and other allegations contained in this Complaint, and causes of action against the Defendants, or persons or parties affiliated with the Defendants, based on her further investigation.

**COUNT I**
**AVOIDANCE OF FRAUDULENT TRANSFER**
**11 U.S.C. §§ 544(b)(1) and 548(a)(1)(A), Fla. Stat. §§ 726.105(1)(a) and 726.108, and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A)**
**(against Yudamas Olivares)**

115. The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 114 above as if specifically set forth herein.

116. The Trustee sues Olivares pursuant to 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(A), Fla. Stat. §§ 726.105(1)(a) and 726.108, and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A) to avoid the Fraudulent Transfers as an actual fraudulent transfer.

117. The Debtor made each of the Fraudulent Transfers prior to the Petition Date and within the Trustee's applicable look back period and statute of limitations.

118. Each of the Fraudulent Transfers were made with the actual intent to hinder, delay, or defraud a creditor of the Debtor.

119. As of the time of the Fraudulent Transfers, the Debtor had at least one actual creditor, including but not limited to the Internal Revenue Service, holding an unsecured claim which is allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Fraudulent Transfers were avoidable under applicable law, including 11 U.S.C. § 548(a)(1)(A), Fla. Stat. §§ 726.105(1)(a) and 726.108.

120. Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may step into the shoes of the Internal Revenue Service for purposes of the creditor's collection period pursuant to 11 U.S.C. § 6502(a).

121. As a result of the above, the Trustee is entitled to avoid the transfers pursuant to 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(A), Fla. Stat. §§ 726.105(1)(a) and 726.108(1)(a), and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A).

**WHEREFORE**, the Trustee respectfully requests the Court enter a judgment in her favor against Defendant Yudamas Olivares: (a) declaring the Fraudulent Transfers to be a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(A) and/or Fla. Stat. § 726.105(1)(a); (b) avoiding and recovering the Fraudulent Transfers as a fraudulent transfer pursuant to 11 U.S.C. §§ 544 and 548(a)(1)(A), Fla. Stat. §§ 726.105(1)(a) and 726.108, and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A); (c) awarding to the Trustee, for the benefit of the Estate, pre- and post-judgment interest and costs; and (d) granting such other and further relief as may be just and proper.

**COUNT II**
**AVOIDANCE OF FRAUDULENT TRANSFER**
**11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B), Fla. Stat. §§ 726.105(1)(b) and 726.108, and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A)**
**(against Yudamas Olivares)**

122. The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 114 above as if specifically set forth herein.

123. The Trustee sues Olivares pursuant to 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B), Fla. Stat. §§ 726.105(1)(b), 725.105(2), and 726.108, and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A) to avoid the Fraudulent Transfers as a constructively fraudulent transfer.

124. The Debtor made each of the Fraudulent Transfers prior to the Petition Date within the Trustee's applicable look back period and statute of limitations.

125. The Debtor received less than reasonably equivalent value in exchange for the Fraudulent Transfers, and:

a. Was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

b. Was engaged in business or a transaction, or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to its business or transaction; or

c. The Debtor intended to incur, or believed it would incur, debts that would be beyond its ability to pay as such debts matured.

126. The Debtor possessed intent to hinder, delay, or defraud any creditor as evidenced by, but not limited to:

d. The Fraudulent Transfers were made to an insider, the Debtor's former fiancé, Olivares.

e. The Debtor retained possession or control of the property transferred after the Fraudulent Transfers.

f. The Debtor concealed the Fraudulent Transfers.

g. Before the Fraudulent Transfers were made, the Debtor had been sued or threatened with suit.

h. The Fraudulent Transfers were of substantially all the Debtor's assets.

127. At the time of the Fraudulent Transfers, the Debtor had at least one actual creditor, including but not limited to the Internal Revenue Service, holding an unsecured claim which is allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Fraudulent Transfers were avoidable under applicable law, including 11 U.S.C. § 548(a)(1)(B), Fla. Stat. §§ 726.105(1)(b) and 726.108.

128. Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may step into the shoes of the Internal Revenue Service for purposes of the creditor's collection period pursuant to 11 U.S.C. § 6502(a).

129. As a result of the above, the Trustee is entitled to avoid the transfers pursuant to 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B), Fla. Stat. §§ 726.105(1)(b) and 726.108(1)(a), and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A).

**WHEREFORE**, the Trustee respectfully requests the Court enter a judgment in her favor against Defendant Yudamas Olivares: (a) declaring the Fraudulent Transfers to be a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B) and/or Fla. Stat. § 726.105(1)(b); (b) avoiding and recovering the Fraudulent Transfers as a fraudulent transfer pursuant to 11 U.SC. §§ 544 and 548(a)(1)(B), Fla. Stat. §§ 726.105(1)(b) and 726.108, and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A); (c) awarding to the Trustee, for the benefit of the Estate, pre- and post-judgment interest and costs; and (d) granting such other and further relief as may be just and proper.

**COUNT III**
**AVOIDANCE OF FRAUDULENT TRANSFER**
**11 U.S.C. § 544(b)(1), Fla. Stat. §§ 726.106(1) and 726.108,**
**and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A)**
**(against Yudamas Olivares)**

130. The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 114 above as if specifically set forth herein.

131. The Trustee sues Olivares pursuant to 11 U.S.C. § 544(b)(1), Fla. Stat. §§ 726.106(1) and 726.108(1)(a), and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A) to avoid the Fraudulent Transfers as a constructively fraudulent transfer.

132. The Debtor made each of the Fraudulent Transfers prior to the Petition Date and within the Trustee's applicable look back period and statute of limitations.

133. The Debtor received less than reasonably equivalent value in exchange for the Fraudulent Transfers.

134. The Debtor was insolvent at the time of the Fraudulent Transfers or became insolvent as a result of the transaction(s).

135. At the time of the Fraudulent Transfers, the Debtor had at least one actual creditor holding an unsecured claim, including but not limited to the Internal Revenue Service, which is allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Fraudulent Transfers were avoidable under applicable law, including Fla. Stat. §§ 726.106(1) and 726.108(1)(a).

136. Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may step into the shoes of the Internal Revenue Service for purposes of the creditor's collection period pursuant to 11 U.S.C. § 6502(a).

137. As a result of the above, the Trustee is entitled to avoid the transfers pursuant to 11 U.S.C. §§ 544(b)(1), Fla. Stat. §§ 726.106(1) and 726.108(1), and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A).

**WHEREFORE**, the Trustee respectfully requests the Court enter a judgment in her favor against Defendant Yudamas Olivares: (a) declaring the Fraudulent Transfers to be a fraudulent transfer pursuant to Fla. Stat. § 726.106(1); (b) avoiding and recovering the Fraudulent Transfers as a fraudulent transfer pursuant to 11 US.C. § 544, Fla. Stat. §§ 726.106(1) and 726.108(1)(a), and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A); (c) awarding to the Trustee, for the benefit of the Estate, pre- and post-judgment interest and costs; and (d) granting such other and further relief as may be just and proper.

**COUNT IV**
**AVOIDANCE OF FRAUDULENT TRANSFERS**
**11 U.S.C. § 544(b)(1) and Fla. Stat. §§ 726.106(2) and 726.108,**
**and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A)**
**(against Yudamas Olivares)**

138. The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 114 above as if specifically set forth herein.

139. The Trustee sues Olivares pursuant to 11 U.S.C. § 544(b)(1), Fla. Stat. §§ 726.106(2) and 726.108(1)(a), and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A) to avoid the Fraudulent Transfers as a fraudulent transfer.

140. The Debtor made each of the Fraudulent Transfers prior to the Petition Date and within the Trustee's applicable look back period and statute of limitations.

141. The Fraudulent Transfers were made to Olivares who is an insider of the Debtor.

142. The Debtor was insolvent at the time of the Fraudulent Transfers.

143. Olivares had reasonable cause to believe that the Debtor was insolvent.

144. At the time of the Fraudulent Transfers, the Debtor had at least one actual creditor holding an unsecured claim, including but not limited to the Internal Revenue Service, which is allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Fraudulent Transfers were avoidable under applicable law, including Fla. Stat. §§ 726.106(2) and 726.108(1)(a).

145. Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may step into the shoes of the Internal Revenue Service for purposes of the creditor's collection period pursuant to 11 U.S.C. § 6502(a).

146. As a result of the above, the Trustee is entitled to avoid the transfers pursuant to 11 U.S.C. §§ 544(b)(1), Fla. Stat. §§ 726.106(2) and 726.108(1), and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A).

WHEREFORE, the Trustee respectfully requests the Court enter a judgment in her favor against Defendant Yudamas Olivares: (a) declaring the Fraudulent Transfers to be a fraudulent transfer pursuant to Fla. Stat. § 726.106(2); (b) avoiding and recovering the Fraudulent Transfers as a fraudulent transfer pursuant to 11 US.C. § 544, Fla. Stat. §§ 726.106(2) and 726.108(1)(a), and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A); (c) awarding to The Trustee, for the benefit of the Estate, pre- and post-judgment interest and costs; and (d) granting such other and further relief as may be just and proper.

**COUNT V**
**RECOVERY OF TRANSFERS**
**11 U.S.C. § 550, Fla. Stat. §§ 726.108 and 726.109,**
**and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A)**
**(against Yudamas Olivares)**

147. The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 114 above as if specifically set forth herein.

148. The Trustee sues Olivares pursuant to 11 U.S.C. § 550 and Fla. Stat. § 726.108(1)(a) to recover the Fraudulent Transfers.

149. The Fraudulent Transfers are avoidable pursuant to 11 U.S.C. §§ 544(b)(1), 548(a)(1)(A), and 548(a)(1)(B); Fla. Stat. §§ 726.105(1)(a), 726.105(1)(b) and/or 726.106(1) and Fla. Stat. § 726.108(1)(a); and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A).

150. With respect to the Fraudulent Transfers, Olivares was either the initial transferee or individual for whose benefit the Fraudulent Transfers were made under 11 U.S.C. § 550(a)(1); or, alternatively, an immediate or mediate transferee within the meaning of 11 U.S.C. § 550(a)(2).

151. To the extent that Olivares was or is found to be an immediate or mediate transferee within the meaning of 11 U.S.C. § 550(a)(2), Olivares was not a transferee who took for value, in good faith, without knowledge of the voidability of the transfer, within the meaning of 11 U.S.C.

§ 550(b)(1); or an immediate or mediate good faith transferee thereof within the meaning of 11 U.S.C. § 550(b)(2).

152. The Fraudulent Transfers are, or the value of Fraudulent Transfers is, recoverable by the Trustee from Olivares for the benefit of the Debtor's Estate, pursuant to 11 U.S.C. § 550, Fla. Stat. §§ 726.108 and 726.109, and 26 U.S.C. §§ 6502(a) and 6901(a)(1)(A).

**WHEREFORE**, the Trustee respectfully requests the Court enter a judgment in her favor against Defendant Yudamas Olivares: (a) declaring the Defendant to be either the initial transferee of the Fraudulent Transfers or an individual for whose benefit the Fraudulent Transfers were was made under 11 U.S.C. § 550(a)(1); or, alternatively, an immediate or mediate transferee of the Fraudulent Transfers within the meaning of 11 U.S.C. § 550(a)(2); (b) directing Olivares to turn over to the Trustee, for the benefit of the Debtor's Estate, the Fraudulent Transfers or the value of the Fraudulent Transfers, plus interest at the applicable statutory rate, reasonable attorneys' fees, and costs and expenses to the extent permissible by applicable law; (c) awarding the Trustee, for the benefit of the Estate, costs under applicable law; and (d) granting such other and further relief as may be equitable and just and proper.

**COUNT VI**
**DECLARATORY JUDGMENT**
**28 U.S.C. § 2201, 11 U.S.C. §§ 105(a), 541, and 542 and Chapter 86, Florida Statutes**
**(against Prime Realty Investors Corp.)**

153. The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 114 above as if specifically set forth herein.

154. The Trustee sues Defendant Prime Corp. seeking a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, Bankruptcy Rule 7001(9), 11 U.S.C. §§ 105(a), 541, 542, and Florida Statutes § 86.061, determining that Prime Corp. is a mere instrumentality and alter ego of the Debtor.

155. The Trustee is in doubt and uncertain as to her power, right, status or other legal or equitable relation arising from and relating to the Debtor's relationship with Prime Corp.

156. Upon information and belief, Prime Corp. has been utilized as a mere instrumentality and alter ego of the Debtor.

157. This Court has the power to render relief based upon a declaratory judgment when necessary or proper; and if the application is sufficient, this Court should declare that Prime Corp., at all times material hereto, was utilized as a mere instrumentality and alter ego of the Debtor.

158. A present controversy exists between the Trustee and Prime Corp. concerning the forgoing.

159. A declaration is necessary to determine whether Prime Corp. was utilized as a mere instrumentality and alter ego of the Debtor.

160. It is equitable for this Court to award the Trustee the reimbursement of her costs and expenses in this matter, and such an award is proper pursuant to Florida Statutes § 86.081.

**WHEREFORE**, the Trustee respectfully requests that the Court enter a judgment in her favor against Defendant Prime Realty Investors Corp.: (a) declaring that at all material times Prime Realty Investors Corp. was and is mere instrumentality and alter ego of the Debtor; (b) awarding the Trustee, for the benefit of the Estate, costs in accordance with applicable law; and (c) granting such other and further relief as the Court deems just and proper.

**COUNT VII**
**DECLARATORY JUDGMENT**
**28 U.S.C. § 2201, 11 U.S.C. §§ 105(a), 541, and 542 and Chapter 86, Florida Statutes**
**(against Malibu Properties Management LLC)**

161. The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 114 above as if specifically set forth herein.

162. The Trustee sues Defendant Malibu seeking a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, Bankruptcy Rule 7001(9), 11 U.S.C. §§ 105(a), 541, 542 and Florida Statutes § 86.061, determining that Malibu is a mere instrumentality and alter ego of the Debtor.

163. The Trustee is in doubt and uncertain as to her power, right, status or other legal or equitable relation arising from and relating to the Debtor's relationship with Malibu.

164. Upon information and belief, Malibu has been utilized as a mere instrumentality and alter ego of the Debtor.

165. This Court has the power to render relief based upon a declaratory judgment when necessary or proper; and if the application is sufficient, this Court should declare that Malibu, at all times material hereto, was utilized as a mere instrumentality and alter ego of the Debtor.

166. A present controversy exists between the Trustee and Malibu concerning the forgoing.

167. A declaration is necessary to determine whether Malibu was utilized as a mere instrumentality and alter ego of the Debtor.

168. It is equitable for this Court to award the Trustee the reimbursement of her costs and expenses in this matter, and such an award is proper pursuant to Florida Statutes § 86.081.

**WHEREFORE**, the Trustee respectfully requests that the Court enter a judgment in her favor against Defendant, Malibu Properties Management LLC: (a) declaring that at all material times Malibu Properties Management LLC was and is mere instrumentality and alter ego of the Debtor; (b) awarding the Trustee, for the benefit of the Estate, costs in accordance with applicable law; and (c) granting such other and further relief as the Court deems just and proper.

## COUNT VIII
## DECLARATORY JUDGMENT
## 28 U.S.C. § 2201, 11 U.S.C. §§ 105(a), 541, and 542 and Chapter 86, Florida Statutes (against Prime Realty Investors LLC)

169. The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 114 above as if specifically set forth herein.

170. The Trustee sues Defendant Prime LLC seeking a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, Bankruptcy Rule 7001(9), 11 U.S.C. §§ 105(a), 541, 542 and Florida Statutes § 86.061, determining that Prime LLC is a mere instrumentality and alter ego of the Debtor.

171. The Trustee is in doubt and uncertain as to her power, right, status or other legal or equitable relation arising from and relating to the Debtor's relationship with Prime LLC.

172. Upon information and belief, Prime LLC has been utilized as a mere instrumentality and alter ego of the Debtor.

173. This Court has the power to render relief based upon a declaratory judgment when necessary or proper; and if the application is sufficient, this Court should declare that Prime LLC, at all times material hereto, was utilized as a mere instrumentality and alter ego of the Debtor.

174. A present controversy exists between the Trustee and Prime LLC concerning the forgoing.

175. A declaration is necessary to determine whether Prime LLC was utilized as a mere instrumentality and alter ego of the Debtor.

176. It is equitable for this Court to award the Trustee the reimbursement of her costs and expenses in this matter, and such an award is proper pursuant to Florida Statutes § 86.081.

**WHEREFORE**, the Trustee respectfully requests that the Court enter a judgment in her favor against Defendant Prime Realty Investors LLC: (a) declaring that at all material times Prime

Realty Investors LLC was and is mere instrumentality and alter ego of the Debtor; (b) awarding the Trustee, for the benefit of the Estate, costs in accordance with applicable law; and (c) granting such other and further relief as the Court deems just and proper.

**COUNT IX**
**DECLARATORY JUDGMENT**
**28 U.S.C. § 2201, 11 U.S.C. §§ 105(a), 541, and 542 and Chapter 86, Florida Statutes**
**(against 15330 NE 10, LLC)**

177. The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 114 above as if specifically set forth herein.

178. The Trustee sues Defendant 15330 seeking a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, Bankruptcy Rule 7001(9), 11 U.S.C. §§ 105(a), 541, 542 and Florida Statutes § 86.061, determining that 15330 is a mere instrumentality and alter ego of the Debtor.

179. The Trustee is in doubt and uncertain as to her power, right, status or other legal or equitable relation arising from and relating to the Debtor's relationship with 15330.

180. Upon information and belief, 15330 has been utilized as a mere instrumentality and alter ego of the Debtor.

181. This Court has the power to render relief based upon a declaratory judgment when necessary or proper; and if the application is sufficient, this Court should declare that 15330, at all times material hereto, was utilized as a mere instrumentality and alter ego of the Debtor.

182. A present controversy exists between the Trustee and 15330 concerning the forgoing.

183. A declaration is necessary to determine whether 15330 was utilized as a mere instrumentality and alter ego of the Debtor.

184. It is equitable for this Court to award the Trustee the reimbursement of her costs and expenses in this matter, and such an award is proper pursuant to Florida Statutes § 86.081.

**WHEREFORE**, the Trustee respectfully requests that the Court enter a judgment in her favor against Defendant 15330 NE 10, LLC: (a) declaring that at all material times Prime Realty Investors LLC was and is mere instrumentality and alter ego of the Debtor; (b) awarding the Trustee, for the benefit of the Estate, costs in accordance with applicable law; and (c) granting such other and further relief as the Court deems just and proper.

## COUNT X
## DECLARATORY JUDGMENT
## 28 U.S.C. § 2201, 11 U.S.C. §§ 105(a), 541, and 542 and Chapter 86, Florida Statutes
## (against Judah Burstyn, David A. Burstyn, and Bradley Keith Burstyn)

185. The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 114 above as if specifically set forth herein.

186. The Trustee sues Defendants Judah Burstyn, David A. Burstyn, and Bradley Keith Burstyn seeking a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, Bankruptcy Rule 7001(9), 11 U.S.C. §§ 105(a), 541, 542 and Florida Statutes § 86.061, determining that the ITF Accounts were not owned by D. Burstyn or B. Burstyn and were, at all times material to this action, owned by the Debtor.

187. The Trustee is in doubt and uncertain as to her power, right, status or other legal or equitable relation arising from and relating to the Debtor's relationship and ownership interest with respect to the ITF Accounts.

188. The Trustee believes that the ITF Accounts have been utilized as an instrumentality of the Debtor.

189. The ITF Accounts were opened in the name of "Judah Burstyn ITF David A. Burstyn and Bradley Burstyn", but were in fact used by solely by the Debtor to hold his personal funds.

190. The funds deposited in the ITF Accounts were at all relevant times property of the Debtor.

191. This Court has the power to render relief based upon a declaratory judgment when necessary or proper; and if the application is sufficient, this Court should declare that the ITF Accounts, at all times material hereto, were utilized as an instrumentality of the Debtor and that the ITF Accounts were solely owned by the Debtor.

192. A present controversy exists between the Trustee, the Debtor, D. Burstyn, and B. Burstyn regarding ownership of the ITF Accounts.

193. A declaration is necessary to determine whether the ITF Accounts were, at all times material to this action, owned solely by the Debtor.

194. It is equitable for this Court to award the Trustee the reimbursement of her costs and expenses in this matter, and such an award is proper pursuant to Florida Statutes § 86.081.

**WHEREFORE**, the Trustee respectfully requests that the Court enter a judgment in her favor against Defendant Judah Burstyn, David A. Burstyn, and Bradley Keith Burstyn: (a) declaring that at all material times the ITF Accounts and the funds contained therein were solely owned by and were property of the Debtor; (b) awarding the Trustee, for the benefit of the Estate, costs in accordance with applicable law; and (c) granting such other and further relief as the Court deems just and proper.

Dated: February 15, 2021.

Respectfully submitted,

**DUNN LAW, P.A.**
*Attorneys for Plaintiff, Marcia T. Dunn, Trustee*
66 West Flagler Street, Suite 400
Miami, Florida 33130
Tel: 786-433-3866
Fax: 786-260-0269
Email: michael.dunn@dunnlawpa.com
jerrod.maddox@dunnlawpa.com

By: */s/ Jerrod M. Maddox*
Michael P. Dunn, Esq.
Florida Bar No. 100705
Jerrod M. Maddox, Esq.
Florida Bar No. 117820